No. 84-125

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

FIRST NATIONAL BANK IN LIBBY,

Plaintiff and Respondent,

-vs-

CRAIG L. TWOMBLY and LORRAINE E. TWOMBLY,

Defendants and Appellants.

---

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Keller & German, Libby, Montana

For Respondent:

Sverdrup & Spencer, Libby, Montana

---

Submitted on Briefs: July 19, 1984

Decided: October 22, 1984

Filed: OCT 22 1984

*Ethel M. Harrison*

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

First National Bank of Libby (Bank) initiated an action in the Nineteenth Judicial District to recover on a delinquent promissory note executed by the Twomblys. Twomblys counterclaimed for breach of duty of good faith. The jury verdict awarded Twomblys compensatory damages of $4,000. The trial court's judgment offset the balance due on the note, the interest accrued and attorney's fees in favor of the Bank. Twomblys appeal. The Bank's appeal was dismissed.

Prior to the trial, the Bank's motion in limine to exclude any evidence of punitive damages was granted by the trial court on the grounds that a contract action prohibits punitive damages. Twomblys sought a writ of supervisory control in this Court directing the trial court to allow punitive damages. The writ was denied since Twomblys had an adequate remedy of appeal. Following a two-day jury trial, the Twomblys' request for instructions on punitive damages was denied. The defense, in support of counterclaim, argued that the Bank's acceleration of the maturity date of the note and subsequent wrongful offset was in bad faith and warranted exemplary damages. This second attempt to have the jury instructed on punitive damages was denied.

Based on special interrogatories, the jury found that the Bank made false representations to the Twomblys and breached its obligation of good faith to Twomblys by accelerating the maturity of the promissory note. Following the offset, judgment was entered for Twomblys in the amount of $1,392.49.

2

Twomblys filed notice of appeal on December 23, 1983, challenging refusal by the trial court to allow punitive damages, and the award of attorney's fees to the Bank.

In July 1978, Craig and Lorraine Twombly began operating the Antlers Restaurant, located between Troy and Libby, pursuant to a lease/option agreement. The Twomblys executed a promissory note with the Bank on February 16, 1979 for $3,500 to purchase a $2,000 ice machine and to pay $1,500 in property taxes on the restaurant. The terms required one payment of principle and interest due on August 16, 1979. The note was accompanied by a standard security agreement, granting the Bank a security interest in the ice machine, inventory and accounts receivable.

Twomblys did not exercise their option to purchase the Antlers Restaurant, when negotiations with the owner failed. This lease was terminated July 31, 1979. Facing unemployment after July, the Twomblys became concerned about repayment of their note due August 16. In early July Twomblys contacted Frank Johnson, the Vice President of the Bank, to renegotiate the payment schedule. Mr. Johnson was the bank officer who initially arranged and approved of the loan involved in this appeal. Most of the discussions concerning restructuring of the loan took place at the restaurant when Mr. Johnson stopped on his way home from the Bank after working hours. All parties agree that at all times during these negotiations Mr. Johnson was acting in the scope of his employment as an agent for the Bank.

Twomblys offered to reduce the $3,500 principle amount by $500 and bring the interest current on August 16, if the Bank would convert the remaining $3,000 balance into an installment loan. Although the Twomblys had the funds to satisfy the subject note in full on August 16, they explained

3

they needed the money they had saved to pay for living expenses. Mr. Johnson testified in his deposition that he assured Mr. Twombly in unequivocal terms that the "straight" promissory note would be converted to an installment note, if the Twomblys made some reduction of the principle and brought the interest current on the note by August 16, 1979. Mr. Johnson also advised the Twomblys that they could wait until July 31, when their restaurant management responsibilities were completed, to take care of this bank matter with First National. Since he was scheduled to be out of town, Mr. Johnson informed the Twomblys that he had discussed the matter with Mr. Wayne Haines, Vice President, who would supervise necessary documentation of conversion of the note.

Craig Twombly telephoned Mr. Haines on August 2. Mr. Haines informed Craig Twombly that he knew nothing about Mr. Johnson's promise to convert the loan. He refused to convert the subject $3,500 obligation to an installment note because Craig Twombly was not employed to assure repayment. Craig Twombly told Mr. Haines that he had relied upon Mr. Johnson's promise to convert the note, had expended the money, and would not be able to pay the note two weeks later. Mr. Haines testified that Craig Twombly hung up the phone in anger and did not afford Mr. Haines the opportunity to discuss any method to resolve the problem. Mr. Haines admitted that he did not attempt to call Craig Twombly back to discuss possible recovery on the loan by selling the ice machine held as security for the loan.

Subsequent to this discussion with Craig Twombly, Mr. Haines confirmed that approximately $2800 remained in the Antlers Restaurant checking account with the Bank. Haines anticipated that Craig Twombly would withdraw all the funds from the Antlers checking account and leave the Bank in a

4

poor collateral position. Haines discussed the problem with the President, Bernard Remick. Haines and Remick admitted that neither had any information other than Craig Twombly's alleged statement to Mr. Haines to support their belief that the Twomblys would not repay their debt when it matured. Both officers decided the note was in jeopardy and declared it immediately due in its entirety. Mr. Haines prepared and drafted an offset statement against the Twombley's checking account in the amount of $2,865, leaving a balance of $1.65.

The Twomblys were given no notice of this offset action against their checking account. Mr. Twombly first acquired notice of the offset when he attempted to cash a check the following day and was advised by the teller of the $1.65 balance in his account. Craig Twombly attempted to discuss the Bank's offset procedure with Mr. Haines personally but Mr. Haines was busy with a customer. The same day after Craig Twombly was unable to reach Mr. Haines on the telephone, he inquired with the bookkeeper who informed him of the offset.

Mr. Haines admitted that he knew Mr. Twombly desired to talk to him about the offset, but that he did not make any attempt to contact him after Craig Twombly left the bank. Mr. Haines felt that the teller's and bookkeeper's explanation and the written statement sent out by the Bank the following day were sufficient notice to Mr. Twombly regarding the Bank's offset action.

Mr. Haines testified that he did not freeze the funds and pursue further negotiations with the Twomblys because freezing the funds would have caused accrual of additional interest on the delinquent promissory note. He admitted at trial that the offset action was based strictly upon Craig

Twombly's telephone statement that he would not pay the $3,500 on August 16. In determining the Twombly promissory note to be "in jeopardy", Mr. Haines did not attempt to establish whether the Twomblys were intending to leave the community or any other information to support a threat to the repayment of the note.

All parties agree that as a result of the acceleration of maturity of the note and the Bank's offset several checks were dishonored due to insufficient funds. The dishonored checks totaled approximately $850. In order to cover these delinquent drafts, Craig Twombly sold the ice machine for $1,800. Twomblys retained the remaining profits for living expenses.

Appellants present the following issues on appeal:

1. Whether it was error for the trial judge to refuse to allow the defendants to introduce evidence in support of punitive damages, to refuse to instruct the jury on punitive damages, and to refuse to allow argument on punitive damages, where it was alleged that the plaintiff acted in bad faith in accelerating an indebtedness of defendants and exercising an offset against defendants' checking account?

2. Whether plaintiff is entitled to attorney's fees where the net judgment was in favor of the defendants on their counterclaim for damages for wrongful offset?

Counterclaimants rely upon section 30-1-203, MCA which provides:

> "Obligation of good faith. Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement."

The Uniform Commercial Code, from which the quoted section comes, applies to the type of transaction here at issue. Appellants further rely upon section 30-1-208, MCA which provides:

6

"Option to accelerate at will. A term providing that one party or his sucessor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised."

The obligations owing under these sections of the Uniform Commercial Code were submitted to the jury with proper instructions. The special verdict contained, among others, the following interrogatories:

"2. Did First National Bank breach its obligation of good faith to the Twomblys by accelerating the maturity of the promissory note? If you (sic) answer is 'yes', proceed to Number 3. If your answer is 'no', proceed to Number 4.

Yes <u>10</u>    No <u>1</u>

". . .

"4. Did First National Bank make false representations to the Twomblys prior to the maturity of the note? If your answer is 'yes', proceed to Number 5. If your answer is 'no', proceed to Number 7.

Yes <u>12</u>    No <u>0</u> "

This case presents a rather unique fact situation. The issues which would form the basis for an award of punitive damages were submitted to the jury and resolved in favor of the appellants. However, the issue of punitive damages was not submitted to the jury and the jury was not permitted to make an award.

In viewing the evidence in a light most favorable to the appellants, which for purpose of this appeal we must do, a jury issue was created on whether the Bank breached its statutory obligation to exercise good faith. The jury in this case found that respondent Bank breached its obligation to act in good faith and further that it made false representations to the Twomblys. Under the circumstances the

7

only remaining question is whether appellants are entitled to punitive damages.

When the duty to exercise good faith is imposed by law rather than the contract itself, as in Gates v. Life of Montana Insurance Company (Mont. 1983), 40 St.Rep. 1287, 668 P.2d 213, the breach of that duty is tortious. Therefore, punitive damages are recoverable if the Bank's conduct is sufficiently culpable.

Punitive damages are recoverable under section 27-1-221, MCA, where malice, oppression, or fraud is shown. We recently defined malice, for these purposes, as:

> "When a person knows or has reason to know of facts which create a high degree of risk of harm to the substantial interests of another, and either deliberately proceeds to act in conscious disregard of or indifference to that risk, or recklessly proceeds in unreasonable disregard of or indifference to that risk, his conduct meets the standard of willful, wanton, and/or reckless to which the law of this State will allow imposition of punitive damages on the basis of presumed malice . . . ." Owens v. Parker Drilling Co. (Mont. 1984), 41 St.Rep. 66, 69, 676 P.2d 162.

We further defined oppression in Owens, supra, as including acts which constitute an abuse of power. 41 St.Rep. at 71.

Viewing the facts in a light most favorable to the appellants, the jury could find that the respondent Bank acted in reckless disregard of the appellants' rights. Such a finding could result in the imposition of punitive damages based upon malice. Furthermore, such a finding, given the Bank's relationship to its debtor, could justify an exemplary imposition for oppression. Finally the jury found that respondent Bank misrepresented facts which could spring the "fraud" basis for a punitive award.

We find that the trial court erred in refusing to submit punitive damages to this jury. The remand is for a new trial

8

on punitive damages only as the jury has already found liability. The Bank has not cross-appealed contesting compensatory damages and this issue need not be retried.

The trial court awarded attorney's fees to the Bank as "prevailing party." In doing so the court erred. This Court recently held in E.C.A. Environmental Management Services, Inc. v. Toenyes, et al. (Mont. 1984), 41 St.Rep. 388, 393, 679 P.2d 213, that, "The party that survives an action involving a counterclaim, setoff, refund or penalty with a net judgment should generally be considered the successful or prevailing party."

The award of attorney's fees in favor of respondent Bank is vacated. The case is remanded for a trial on the issue of punitive damages only in accordance with the views herein expressed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent. I would affirm the rulings of the trial judge.

_____
Justice

9