AMERICAN INDEMNITY CO. *v.* SOUTHERN MISSIONARY COLLEGE.

(*Knoxville*, September Term (May Session) 1952.)

Opinion filed June 5, 1953.

Petition to Rehear denied July 17, 1953..

514

McAllester & McAllester, of Chattanooga, for appellant.

Wilkerson & Wilkerson, of Chattanooga, for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

The American Indemnity Company issued a policy of insurance to the Southern Missionary College in the maximum amount of $4,000, indemnifying it against loss caused by safe-burglary or robbery occurring on the premises of the insured. The policy was issued under date of December 20, 1950, for a period of 3 years. Three endorsements were later issued, but they are not material to a determination of the issue involved in this controversy.

The Southern Missionary College, located at Collegedale, Hamilton County, Tennessee, was chartered as "an eleemosynary corporation organized under the laws of

Tennessee for the purpose of conducting an educational institution.'' In connection with its educational activities and as a part thereof it carries on a limited industrial and mercantile program for the purpose of enabling students to work their way through school and ''to give them training in various practical crafts and employments and in order to make available services and commodities to its faculty and students, and, in some instances, to the public generally. Among such activities are the operation of a broom factory, wood-working shop, print shop, a dairy herd and a commissary or college store.'' All its receipts and income inure to the sole benefit of the college.

In June and July, 1951, the officers and directors of the Southern Missionary College applied for a charter of incorporation under the laws of Tennessee to be known as ''Collegedale Mercantile Enterprises, Inc.'', the same being a Tennessee corporation for profit. This charter was issued by the Secretary of State on July 11, 1951, and recorded in the Register's office of Hamilton County. The purposes of this corporation are set out in its charter as follows:

''The general nature of the business to be transacted by this corporation is the operation of a commissary or college store, including a fountain, the sale of books suitable and usable by students in said college, and others, the expedition of the purchase of automobiles by full time employees of the 'Seventh-Day Adventists Church, of this corporation, and Southern Missionary College, a public welfare, educational and religious corporation under the laws of the State of Tennessee, with its principal place of business at Collegedale, Hamilton County, Tennessee, a service station or garage, a college creamery

to process, handle and dispense the production and distribution of milk produced from the herd of cows belonging to said college, and other sources, and to do such things as are incidental, proper and necessary thereto. All these things will be conducted on the campus of said college, and to the end of affording facilities to students who are working their way through college, and others connected with the college, and, to the end aforesaid, this corporation shall have the power and right to acquire, by purchase or otherwise, merchandise for re-sale, all necessary or proper equipment, fixtures, machinery, buildings and facilities for conducting the business, and/or to have such powers and do such things as are given and authorized under Chapter 5, Article 1, Sec. 3709, et seq., of the 1932 Code of Tennessee, and under and by virtue of any other laws pertinent to the business and objects of this corporation and relating to private corporations, and/or amendments thereto."

The corporation was authorized to issue 1,000 shares of common stock of no par value and to begin business when $1,000 of its stock had been subscribed for. The Southern Missionary College subscribed for all the capital stock of the said "Collegedale Mercantile Enterprises Inc." The consideration for said stock was the transfer to the Collegedale Mercantile Enterprises, Inc., by the Southern Missionary College of all of the assets owned by the latter in connection with the commissary or college store, expediting the purchase of automobiles by full time employees of the Seventh-Day Adventists Church, the service station or garage, college creamery, etc. Officers and directors of the said Collegedale Mercantile Enterprises, Inc. were and are officers and directors of the Missionary College.

The foregoing statement of facts is the basis for a bill in the Chancery Court to recover on the insurance policy referred to. The bill alleges that on the night of January 19, 1952, and while the policy was in full force and effect the complainant, Southern Missionary College "sustained a loss from burglary of $5,880.82 in cash taken from the safe in the college store, located on the premises of insured, and damage to property in the approximate amount of $339.55." It is charged that the defendant was duly notified and after an investigation refused payment. The bill also seeks to recover a penalty of 25% on the ground that the defendant's refusal to pay was in bad faith.

The American Indemnity Company demurred to the bill upon the following grounds:

"1. The Defendant, American Indemnity Company of Galveston, Texas issued a policy naming the Southern Missionary College as the named insured and in the declaration attached to the policy stated that it is an educational institution and, therefore, said policy did not cover any other person, except the Southern Missionary College.

"2. The Collegedale Mercantile Enterprises, Inc., a separate and distinct entity was chartered July 11, 1951 and said burglary occurred from the office of the Collegedale Mercantile Enterprises, Inc. and said loss was not the loss of the complainant.

"3. The petition shows on its face that the money was stolen from the college store which was a part of the corporation known as Collegedale Mercantile Enterprises, Inc., chartered July 11, 1951, and was a separate and distinct entity from the Southern Missionary College, and the Southern Missionary

College, Inc. sustained no direct loss as a result of the burglary of the college store.

"4. The policy issued to the Southern Missionary College, Inc. provides that the Defendant would indemnify the complainant for all direct loss of money from its premises but the petition on its face shows that the loss was sustained by Collegedale Mercantile Enterprises, Inc. and not from the premises of the Complainant, and from the premises of the Collegedale Mercantile Enterprises, Inc."

The Chancellor overruled the demurrer and granted a discretionary appeal to this Court.

The assignments of error reflect the theory of the appellant, (1) that "the policy did not cover any other person except the Southern Missionary College"; (2) "The burglary occurred from the office of the Collegedale Mercantile Enterprises, Inc. and the loss was not the loss of the complainant". The contention made in the third and fourth assignments is that the corporations are separate and distinct entities and the policy, made an exhibit to the bill, did not insure any loss that was suffered by the Collegedale Mercantile Enterprises, Inc.

The undisputed factual issue is, as stated by the Chancellor in his opinion: "The complainant held all the stock of the subordinate corporation and controlled its activities through the same personnel as it had done before its procurement of the charter of the subordinate corporation." The stockholders and directors of the parent corporation and the subordinate corporation were identical. The latter was wholly owned and controlled by the complainant. The demurrer admits the foregoing facts to be true; also that all benefits from any and all business activities carried on by Mercantile Enterprises, Inc. belonged to the complainant.

We think the two corporations are separate entities, but their existence as such is a mere fiction of the law. The subordinate corporation does the bidding of its parent down to the minutest detail. The domination of the parent over its offspring was so complete as to make them practically indistinguishable except in name. There can be no other reasonable conclusion from the admitted facts but that Mercantile Enterprises was an agency or instrumentality of the complainant, and all property including the money burglarized was in reality the property of the latter, subject of course to the claims of creditors of the former.

The great weight of authority supports the proposition that a corporation will be regarded as a legal entity and will not be ignored by the courts except "where it is used as a blind or instrumentality to defeat public convenience, justify wrong, or perpetrate a fraud". In support of the foregoing appellant's counsel cite *Majestic Co.* v. *Orpheum Circuit,* 8 Cir., 21 F. (2d) 720, and numerous other cases. Our own cases are to the same effect. Thus in *Fidelity Trust Co.* v. *Service Laundry Co.,* 160 Tenn. 57, 22 S. W. (2d) 6, 7, there appears the statement that a corporation "has an existence separate and distinct from that of the owners of its capital stock; * * *. But it is also recognized by the courts that this separate and distinct existence of a corporation is fictitious in its nature, created and entertained for purposes incident to the conduct of the business of the corporation and the management and control of its property, and that many special circumstances may arise in which such separate and distinct existence will be disregarded." To the same effect is *Nashville* v. *Ward,* 84 Tenn. 27, 30-31, and other cases cited in the opinion. The Court of Appeals dealt with this question (opinion by Felts, J.) in

*Tenn. Consol. Coal Co.* v. *Home Ice & Coal Co.*, 25 Tenn. App. 316, 156 S. W. (2d) 454, 458 and held that under the proven facts a subordinate corporation became the "agency or instrumentality of the parent". (Certiorari denied.) See also 7 R. C. L., Sec. 4, p. 27.

The defendant's whole theory of non-liability rests in the false assumption that the property which is protected under the contract of insurance was not the property of the complainant. In other words the parent corporation had no insurable interest in the money which was burglarized from the commissary. But the contention is not only based upon a fiction of the law, but is contrary to the true facts as charged in the complainant's bill and admitted by the demurrer.

"In 29 Am. Jur., p. 293, et seq., the general rule is said to be that, 'anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction,' and it is sufficient that a loss of the property insured not only would but might subject the insured to pecuniary injury." The foregoing is cited with approval in *Baird* v. *Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 669, 162 S. W. (2d) 384, 391, 140 A. L. R. 1226. In the same case it is held, "Even a contingent interest may constitute an insurable interest." See also *Donaldson* v. *Sun Mut. Insurance Co.*, 95 Tenn. 280, 32 S. W. 251, 252, wherein it is held that a stockholder "has an insurable interest in the specific articles of tangible property belonging to the complainant."

It cannot be questioned that the Southern Missionary College would, upon the dissolution of Collegedale Mercantile Enterprises, Inc., be entitled to all the assets of the latter subject to the claims of creditors. Its insurable interest is comparable to the interest which a

stockholder has in specific corporate property, i. e., dividends and assets upon liquidation.

"It is generally held that a stockholder in a corporation has an insurable interest in the property of the corporation, which will sustain a recovery on a policy issued to him on such property. Subject to some authority to the contrary, the rule is that a stockholder has an insurable interest in specific corporate property, although he does not possess an estate, either legal or equitable, in the property insured. This rule is established upon the ground that the right of a stockholder to dividends and a share of the assets of the corporation upon its dissolution may be prejudiced by a destruction of the corporate property. Upon similar principle, the interest of a stockholder in the profits of an adventure undertaken by the corporation is also an insurable interest in such profits." 29 Am. Jur., Sec. 350, p. 308.

The assignments of error are overruled, and the Chancellor's decree is affirmed. The cause is remanded for further proceedings consistent with this opinion.

PREWITT, GAILOR and BURNETT, Justices, concur.

TOMLINSON, Justice, dissents.

### ON PETITION TO REHEAR.

NEIL, Chief Justice.

The petition to rehear quotes excerpts from the original opinion and complains that we committed error in misapplying the applicable rule of law. The authorities cited and argument made in support of the petition presents no new matter or any additional authority which was not fully considered.

Able counsel for the petitioner says:

"In the case at bar the policy covered the Southern Missionary College as owner and no way can it be interpreted to cover their interest as a stockholder, as they failed to insure their interest as such stockholder.

"In all the cases and in all the statements of the law that a stockholder has an insurable interest state that the policy must be issued to cover that interest."

We welcome an opportunity to again respond to the contention of counsel that the insured was not the owner of the property and that the policy did not cover an undeclared "insurable interest".

In *Parker* v. *Bethel Hotel Co.*, 96 Tenn. 252, 34 S. W. 209, 215, 31 L. R. A. 706, it was held that "A corporation and its shareholders are distinct legal entities" and since the legal title to the corporate property was in the Bethel Hotel Company one who was the sole owner of the stock therein could not convey the property to another. The deed executed by the sole owner of the stock was held to be void. Moreover the alleged sole owner of all the stock in the corporation had transferred most of it prior to the date of the deed which was held to be void. The contest was between alleged secured and unsecured creditors. Insurance was in no way involved.

No one can question the soundness of this opinion, holding that the legal title was in the corporation and an attempted conveyance of the property by a lone stockholder was void. But it is interesting to note that in the same opinion it was expressly held that shareholders are beneficial owners of the corporate property, subject to the claim of creditors, such as "surplus profits of the corporation".

The case is in point only as authority for the proposition that stockholders as such have no *legal title* to corporate property. To all of which we fully agree. But it does not follow that a sole and unconditional owner of all the stock in a corporation does not bear such a relationship to the corporate property that he has no insurable interest therein.

The petitioner is most insistent that the Southern Missionary College should have, in applying for the policy, stated the nature of its alleged interests, i. e., that it was the owner of all the stock in the Collegedale Mercantile Enterprises, Inc. We cannot accede to this as a sound postulate in the Law of Insurance. There are cases almost without number dealing with the question of "sole and unconditional ownership" of property where the insurer insisted upon a forfeiture because of an invalid title, or no legal title, or no title at all in the policy holder. But in cases too numerous to require citation it is held that even though ownership does not rise to the dignity of a legal title the interest may be insurable. Thus in Couch's Cyclopedia of Insurance Law, Vol. 4, Sec. 915, it is said:

"So, it is said that a condition for sole and unconditional ownership means the 'real owner,' and is not breached by the mere fact that the record title is, for purposes of convenience, in another for a time. In fact, an equitable title in the insured is a sufficient compliance with a condition that the insured must have sole and unconditional ownership. Again, a provision for 'sole and unconditional ownership' does not require a perfect legal title, *but is satisfied if the insured has an insurable interest, and is the substantial owner upon whom the entire loss would fall.*" Emphasis ours.)

Another statement by the same author in Vol. 2, Sec. 426, is believed to be applicable to the case at bar:

"Although there is some question whether a stockholder in a private corporation has an insurable interest in the corporate property, the weight of authority seems to be that he has. And this is consistent with the general rules relating to 'insurable interest,' namely, that such an interest does not necessarily imply a property in the subject of the insurance, or even a legal or equitable title or possession; that a qualified interest is an insurable interest; that a slight or contingent interest is sufficient, when founded upon an actual right to the thing or upon a valid contract relating to it; and that, *whenever a legal connection can be shown to exist between injury to the thing insured and loss to the party insuring, it is sufficient.*" (Emphasis ours.)

There is no forfeiture clause, however, in the policy, such as that the said policy shall be void if the Insured is not the "sole and unconditional owner of the property." On the contrary the policy provides: "Ownership of Property—Records. *The insured property may be owned by the Insured or held by him in any capacity whether or not the Insured is liable for such loss or damage as is covered hereby,* provided that the company shall not be liable for *such damage to the premises* unless the Insured is the owner thereof or is liable for such damage thereto.*" (Emphasis ours.)

It thus conclusively appears that the policy is enforceable by the Insured if the property is held by him in any capacity. The bill of the complainant is therefore not demurrable. Moreover the foregoing policy provision refutes the petitioner's contention that complainant's suit is not maintainable on the ground that the

interest sought to be insured was not specifically and precisely set out in the policy.

The petitioner makes no contention, either in oral argument or on the brief, that Southern Missionary College made any misrepresentation as to its interest in the property insured. The question of fraud does not enter into the present controversy. There is nothing to indicate that Southern Missionary College misrepresented its legal relationship to Collegedale Mercantile Enterprises, Inc., or deceived the petitioner either by word or act in applying for this policy of burglary insurance. The record fails to disclose the exact source of the money alleged to have been stolen from the college store. The complainant's bill merely alleges the following fact, which is admitted by the demurrer, that Southern Missionary College *"sustained a loss* from burglary of $5,-880.62 in cash taken from the safe in the college store, *located on the premises of the insured."* (Emphasis supplied.)

The only inference to be drawn from this allegation in the bill is that the complainant, Southern Missionary College, had an interest in the contents of the safe that was burglarized, the same being "on the premises of the Insured." It is immaterial under the express provisions of the policy in what capacity ownership, or right of possession, was claimed.

The petition to rehear is denied.

TOMLINSON, Justice (dissenting).

The able and scholarly majority opinion has, on the particular facts of this case, an equitable appeal that tends to commend its acceptance. I cannot, however, escape the feeling that it is not an equity permitted by the law applicable to the case.

The brief submitted in behalf of appellee, Southern Missionary College, asserts that "the question of an insurable interest in the property (the $4,000.00 stolen) is not the determinative question in this case  *  *  *. The question for determination is whether complainant suffered a direct loss. It was complainant's property that was stolen". The majority opinion, as I understand it, bases its conclusion upon the proposition that a stockholder has an insurable interest in the property of his corporation.

I cannot agree with the appellee's assertion that "it was complainant's property that was stolen". Complainant was only a stockholder in the corporation that had the legal title to this $4,000. In *Parker* v. *Bethel Hotel Co.*, 96 Tenn. 252, 280, 34 S. W. 209, 216, 31 L. R. A. 706, it was held that the single stockholder to all stock of that corporation "had no title, legal or equitable, to its property". In *Hinton* v. *Carney*, a case decided by this Court in June of 1952, and reported in 250 S. W. (2d) 364, 366, the interest which a stockholder owns in the property of a corporation is thus defined:

" 'The ownership of a share of stock, so far as the property of the corporation is concerned, is but the ownership of the right to participate from time to time in the net profits of the business, and upon the dissolution of the corporation to a proportion of the assets after the payment of the corporate debts' ".

In *Hinton* v. *Carney*, supra, all the stock was owned by one person, as in the case at bar.

It follows from that held in *Parker* v. *Bethel Hotel Co.*, supra, and *Hinton* v. *Carney*, supra, as I see it, that appellee is mistaken in its assertion that it was appellee's property that was stolen. Appellee had no title, legal or equitable, in that $4,000. Its only interest was the right

to participate in net profits, if any, and to the assets upon dissolution of the corporation, if any assets remained after payment of debts of the corporation.

On the theory of having an insurable interest the majority opinion allows the stockholder, Southern Missionary College, to recover not on its interest thus defined by our cases, supra, but allows a recovery of the res itself. That is not the obligation undertaken by the insurance company.

The obligation of the insurance company to the Southern Missionary College is controlled by the terms of the insurance contract, of course. That obligation, in so far as applicable to this case, is as follows:

"To indemnify the insured (a) for all direct loss of money and securities occurring within the premises and caused by the actual destruction, disappearance or wrongful abstraction thereof".

In my view of the matter the theft of this $4,000 was not a direct loss to Southern Missionary College. The direct loss was to Collegedale Mercantile Enterprises, Inc., it being the owner of the $4,000. The only loss occurring to Southern Missionary College by reason of this theft was the net profit, if any, which might have been made by reason of this $4,000 had it not been stolen, or the amount, if any, which Southern Missionary College as such stockholder might have received from this $4,000 after payment of the debts of the corporation when, and if, that corporation is dissolved. In my opinion this is not a direct loss to Southern Missionary College; hence, not within the terms of the insurance contract under which the recovery is allowed.