IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2016 Session

# REGIONS BANK v. THOMAS D. THOMAS, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00511307      Robert L. Childers, Judge**

_____

**No. W2015-00798-COA-R3-CV – Filed April 27, 2016**
_____

Following a borrower's default on a loan agreement, Regions Bank ("Regions") accelerated the loan and filed this lawsuit against the loan's guarantors to collect the amounts due. After Regions sold the collateral securing the loan, it sought a judgment for the remaining deficiency. This is the second appeal of this case to this Court. Although the trial court awarded Regions a deficiency judgment prior to the first appeal, we vacated that award upon concluding that Regions had failed to provide sufficient notice to the guarantors prior to its disposition of the collateral. We observed that under Tennessee Code Annotated section 47-9-626, a secured party that has not complied with the commercial code's collection, enforcement, disposition, and acceptance requirements can only recover a deficiency if it proves that compliance with the relevant provisions would have yielded a smaller amount than the secured obligation, together with expenses and attorney's fees. Because the trial court did not make any findings on this issue, we remanded the case for further proceedings to determine the amount of the deficiency, if any, under Tennessee Code Annotated section 47-9-626. On remand, the trial court entered a deficiency judgment against the guarantors in the amount of $1,210,511.51. Both sides now appeal from this judgment, asserting various issues. Because Regions did not present any evidence that it would have received less than the total amounts due to it had it provided proper notice, we reverse the trial court's determination that Regions is entitled to a deficiency. We further reject the guarantors' assertions that they are entitled to a surplus.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, and KENNY ARMSTRONG, JJ., joined.

Richard E. Charlton, Memphis, Tennessee, and Kirk L. Clements, Goodlettsville, Tennessee for the appellants, Thomas D. Thomas, Helen L. Thomas, and The Thomas Family Living Trust.

David R. Evans, Chattanooga, Tennessee, and Stephen Leffler, Memphis, Tennessee, for the appellee, Regions Bank.

**OPINION**

**I. Background and Procedural History**

This case arose out of a secured transaction entered into between LGT Aviation, Inc. ("LGT") and Regions' predecessor in interest, Union Planters Bank ("Union Planters"). Because the pertinent background facts are adequately set forth in our prior Opinion, *Regions Bank v. Thomas*, 422 S.W.3d 550 (Tenn. Ct. App. 2013) (hereinafter, "*Regions I*"), we restate them only briefly here. In August 2004, LGT obtained a loan from Union Planters in an amount over $2,300,000. *Regions I*, 422 S.W.3d at 554. The loan documents were executed by Mr. Thomas D. Thomas ("Mr. Thomas"), the President and sole shareholder of LGT. *Id.* Included among the documents executed by Mr. Thomas were the following: a business loan agreement; a promissory note secured by a 1981 Hawker 700-A twin engine aircraft ("the aircraft" or "collateral"); an agreement to provide insurance; and a notice of insurance requirements. *Id.* The loan was guaranteed, jointly and severally, by Mr. Thomas, Helen L. Thomas, and the Thomas Family Living Trust (collectively, "the Guarantors"). *Id.*

Although the loan documents required LGT to keep the aircraft fully insured "under a form of policy acceptable to the Bank," LGT allowed the insurance policy on the aircraft to lapse in August 2006. *Id.* In June 2007, Regions' legal counsel sent a letter to Mr. Thomas and LGT advising that Regions had not received any confirmation of insurance on the aircraft. *Id.* Within the correspondence, Regions' counsel stated that Mr. Thomas had failed to respond to previous inquiries regarding the insurance coverage and noted that the failure to maintain coverage constituted a default under the loan agreement, security agreement, and promissory note. *Id.* Eventually, after Mr. Thomas failed to respond or rectify the absence of insurance on the collateral, Regions sent notice that it was accelerating all of LGT's payment obligations. *Id.* at 555. Although Regions demanded immediate payment of the total amounts due plus attorney's fees, LGT did not repay the loan. *Id.*

In October 2007, Regions filed a lawsuit against the Guarantors in the Shelby County Circuit Court due to LGT's failure to repay the loan. *Id.* The complaint sought a judgment for the outstanding loan balance with interest, plus costs and attorney's fees. *Id.* While the lawsuit was pending, Regions took steps to repossess the aircraft and remarket it for sale. *Id.*

- 2 -

at 556. The aircraft was subsequently located and repossessed in California in February 2008, and after some initial maintenance, it was flown to South Carolina for additional repairs. *Id.* Regions eventually sold the aircraft at a private sale in December 2008 for a purchase price of $875,000. *Id.* at 556, 565. It is undisputed that LGT made all payments due on the loan in a timely manner until the aircraft was sold. *Id.* at 557.

In February 2009, the Guarantors filed an answer and counter-complaint. *Id.* at 556. In their pleadings, they noted that LGT had continued to make all payments due on the loan in a timely manner and that Regions had accepted these payments without objection. *Id.* at 557. They also contended that Regions had cured the breach by purchasing insurance on LGT's behalf and billing LGT for the premiums.[1] *Id.* A hearing was later held over several days in May 2011.

Following the May 2011 hearing, the trial court entered a deficiency judgment in Regions' favor. *Id.* at 553. The trial court concluded that LGT had breached the loan agreement by failing to maintain insurance coverage on the collateral and that the failure to maintain insurance constituted default. *Id.* The trial court further found that Regions had taken possession of and sold the aircraft in a commercially reasonable manner. *Id.*

Subsequent to the entry of final judgment, the Guarantors appealed to this Court asserting various issues. Among other things, the Guarantors contended that a material breach of the loan agreement had not occurred, that Regions' repossession of the aircraft was not in good faith, that the alleged default was cured by Regions' conduct, that the trial court erred in awarding a deficiency where the Guarantors were not given notice of the sale of the aircraft, and that the sale and repair of the aircraft were not commercially reasonable. *Id.* When we reviewed these issues in the first appeal, we concluded that the majority of them were without merit. We concluded that the parties' agreement had been breached due to the failure to maintain insurance on the aircraft and opined that Regions had not acted in bad faith in repossessing the collateral. *Id.* at 560-61. We also observed that there was nothing in the record to indicate that Regions waived the contractual obligation of insurance or that the default was ever cured. *Id.* at 562.

Notwithstanding our conclusions on these issues, we opined that the record did not support the trial court's finding that Regions had provided the Guarantors with sufficient notice regarding the sale of the aircraft as required by state law. *Id.* at 565. In pertinent part, we explained as follows:

---

[1] Regions had previously informed the Guarantors in a March 2008 letter that it had placed insurance on the aircraft as permitted by the loan documents. *Regions I*, 422 S.W.3d at 556.

[T]he correspondence sent by Regions contained in the record reiterated to [the Guarantors] that Regions had an option under the loan documents to take possession of and sell the aircraft, and that it might exercise its right to do so. It did not notify [the Guarantors] of a settled intent to dispose of the aircraft, of whether the aircraft would be sold by public or private sale, or on or after what date the sale would occur. Additionally, it is undisputed that Regions took possession of the aircraft in February 2008, and Regions does not dispute [the Guarantors'] assertions that they did not know that the aircraft had been taken into possession by Regions until December 2008, when it had been sold. There is nothing in the record to suggest that [the Guarantors] had actual knowledge of Regions' attempts to sell the aircraft; that [the Guarantors] had an opportunity to review marketing materials; or that [the Guarantors] had an opportunity [to] see that the sale brought a fair price. Additionally, although Regions clearly declared a default by reason of the failure to maintain insurance, demanded accelerated payment of the balance of the loan, and suggested that it might take possession of and sell the aircraft, there is nothing in the record to demonstrate that Regions notified [the Guarantors] that it had, in fact, taken possession of the aircraft so as to provide [the Guarantors] with a reasonable opportunity to redeem the aircraft before it was sold at private sale.

*Id.* at 564-65.

After outlining how Regions failed to provide proper notice of sale of the collateral, we endeavored to explain why its failure was relevant. In this regard, we noted that when a secured creditor fails to provide proper notice of sale or fails to comply with the commercial code's other requirements regarding collection, enforcement, disposition, or acceptance, *the creditor cannot recover a deficiency unless the creditor proves that compliance with the relevant provisions would have yielded a smaller amount than the secured obligation, together with the expenses and attorney's fees. Id.* at 566 (citing Tenn. Code Ann. § 47-9-626). We further observed that the trial court had not made any findings as to whether Regions had carried its burden in demonstrating that it was entitled to a deficiency under this standard. *Id.* Accordingly, we vacated the trial court's deficiency award and remanded the matter for further proceedings in order to determine whether a deficiency was appropriate under Tennessee Code Annotated section 47-9-626. We pretermitted all other issues in light of our holding. *Id.* at 567.

On November 21, 2013, following the remand of the case, the Guarantors filed a motion seeking to dismiss Regions' complaint Within their motion, the Guarantors argued that Regions had failed to show that it would not have been fully satisfied had it given proper

- 4 -

notice of sale. They also referenced and attached an affidavit of Mr. Thomas. In his affidavit, Mr. Thomas generally attested to his wealth and financial standing, specifically stating that had Regions provided him with proper notice of sale, he would have ensured that the aircraft was not sold to anyone other than himself or his designee at full fair market value.

On January 10, 2014, Regions filed a response in opposition to the Guarantors' motion to dismiss. In pertinent part, Regions argued that this Court had remanded the case to the trial court for the sole purpose of allowing the trial court to make findings of fact on the fair market value of the aircraft at the time that it was sold. Regions contended that this Court had not taken issue with the trial court's prior findings that the sale itself was commercially reasonable. Rather, Regions contended that this Court had only taken issue with the insufficient notice of sale which, according to Regions, triggered the trial court's need to make findings of fact regarding the aircraft's fair market value. Regions denied that the Guarantors' purported ability to pay the outstanding loan obligations had any legal relevance to the issue before the trial court on remand.

On March 21, 2014, the Guarantors filed a reply in support of their motion to dismiss Regions' complaint. Therein, the Guarantors maintained their argument that Regions had failed to show that it would not have been satisfied had it provided the required notice of sale. Assuming *arguendo* that Regions had overcome this burden, the Guarantors posited that Regions had nonetheless failed to rebut the presumption that an otherwise lawful sale would have satisfied the loan. Citing Tennessee Pattern Jury Instruction 14.71, the Guarantors asserted that any damages should be based on the fair market value of the collateral at the time of its repossession by Regions. The Guarantors' motion to dismiss was eventually denied by the trial court by an order entered on September 19, 2014.

While the case remained pending, the parties litigated a variety of issues concerning the scope of the trial court's inquiry on remand and the evidence that was to be considered. Following the filing of several motions and responses thereto, the trial court resolved these issues in a trio of orders entered on February 6, 2015. In addition to identifying certain parts of the record that the trial court would consider on remand, the February 6 orders instructed the parties that they could file proposed findings of fact and conclusions of law for the court's consideration. The trial court further held that Regions had the burden of rebutting the presumption that a "fully compliant disposition" would have produced enough proceeds to satisfy the debt owed to it. Both parties subsequently filed competing proposed findings of fact and conclusions of law.

After taking the matter under advisement, the trial court entered an order on March 27, 2015 that outlined its findings of fact and conclusions of law for the case. The trial court concluded that Regions had met its evidentiary burden concerning its right to a deficiency by

- 5 -

"presenting evidence that established the fair market value of the Aircraft at the time of sale." This established value, as found by the trial court, was less than the outstanding amounts due to Regions. Relying on deposition testimony from the purchaser of the aircraft, the trial court found that the fair market value of the collateral was $1,500,000.00 at the time of its sale. Because the actual sale had only produced $875,000.00 in proceeds, the trial court was of the opinion that "an additional $625,000.00 . . . would have been realized from the sale of the Aircraft had the noncomplying Bank proceeded in accordance with Section 47-9-601 *et. seq.*" After applying the relevant credits, interest, and expenses that it concluded should be taken into account, the trial court granted Regions a deficiency judgment in the total amount of $1,210,511.51. This appeal followed.[2]

## II. Issues Presented

In their appellate brief, the Guarantors present six issues for our review. Restated slightly, these issues are as follows:

1.  Whether the trial court erred in not awarding the Guarantors a surplus of $501,4451.54.

2.  Whether the trial court erred in awarding Regions a deficiency when Regions failed to prove that, had Regions provided the Guarantors sufficient notice of disposition, the Guarantors would not or could not pay the amount of indebtedness.

3.  Whether the trial court erred in finding that Regions met its burden to prove that the aircraft value was less than the indebtedness.

4.  Whether the trial court erred in deducting $500,000 from the $2,000,000 fair market value of the aircraft based on testimony that was not admitted into evidence and referred to a time sixteen months after Regions' sale of the aircraft.

5.  Whether the trial court erred in awarding expenses paid by Regions for unnecessary maintenance on the aircraft when there was no proof or expert proof as to the "necessity" and "reasonableness" of such expenses.

---

[2] When we initially reviewed the record transmitted to us on appeal, we observed that the order appealed from was not compliant with Rule 58 of the Tennessee Rules of Civil Procedure. Because a supplemental record has since been filed demonstrating the trial court's compliance with the Rule, we can properly exercise jurisdiction over this appeal.

6. Whether the trial court erred in awarding Regions a deficiency as Regions failed to meet its burden of proof that all aspects of the disposition were commercially reasonable.

In the "statement of the issues" section of its brief, Regions presents the following issues for our consideration:

1. Whether Appellants preserved the objections asserted on appeal with respect to the trial court's procedural rulings for handling the proceedings below on remand and, if so, whether those procedural guidelines constitute [a]n abuse of discretion and reversible as such.

2. Whether Appellants' claims and assertions regarding what they purport was a commercially unreasonable sale, all of which were rejected as part of the original judgment before this Court on the prior appeal, have any legal relevance to the application of T.C.A. § 47-9-626(3)(B) and, if so, whether these allegations have any factual and/or legal merit.

3. Whether Regions satisfied the initial burden-shifting presumption codified by T.C.A. § 47-9-626(4).

4. Whether the preponderance of the evidence showed that the fair market value of the Aircraft, assuming an otherwise compliant sale, was something other than the $1,500,000 fair market value determined by the trial court.

5. Whether the trial court erroneously excluded certain deposition testimony from Joe Duncan and Edd Conn in reaching its decision on the fair market value of the Aircraft if the preponderance of the evidence within the record otherwise establishes a fair market value for the Aircraft in excess of $875,000.

### III. Standard of Review

In reviewing the trial court's findings of fact, we review the record de novo and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). In order for the evidence to preponderate against a trial court's finding of fact, "it must support another finding of fact with greater convincing effect." *Cumberland Bank v. G & S Implement Co., Inc.*, 211 S.W.3d 223, 228 (Tenn. Ct. App. 2006) (citation omitted). When reviewing a trial court's resolution of legal issues, we

employ no presumption of correctness. *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 414 (Tenn. 2013). Rather, we review the issues de novo and "reach our own independent conclusions." *Id.* (citations omitted). When dealing with statutory interpretation, which is a question of law, "[o]ur primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011) (citation omitted). We presume that every word in a statute has meaning and purpose, and "[o]ur obligation is simply to enforce the written language." *Id.* (citations omitted). Full effect should be given to every term "if the obvious intention of the General Assembly is not violated by so doing." *Id.* (citation omitted).

## IV. Discussion

Although the parties' briefs attack the trial court's final order from many angles,[3] the ultimate question is whether either side can recover a monetary judgment against the other. Having reviewed the record transmitted to us on appeal, we are compelled to answer this question in the negative. In addition to concluding that the Guarantors have no standing to seek recovery for an alleged surplus, we are of the opinion that Regions failed to rebut the presumption that it would have been satisfied had it provided the Guarantors proper notice of the aircraft's sale. As will be evident from our discussion below, an analysis of the more specific issues raised by the parties is therefore pretermitted as unnecessary.

*The Guarantors' Claim to a Surplus*

Before reviewing the Guarantors' assertion that Regions failed to establish its right to a deficiency judgment in this case, we begin our analysis by addressing the Guarantors' claim that they are entitled to recover a surplus. As stated in their brief, the Guarantors contend that they are entitled to a surplus in order to recover the equity that they and LGT allegedly lost when "Regions repossessed the aircraft and sold it . . . in a commercially unreasonable manner." (Guarantors' brief p. 38) Assuming *arguendo* that a surplus would have existed following a commercially reasonable sale of the aircraft, we conclude that the Guarantors have no standing to seek a surplus award. Although Tennessee Code Annotated section 47-9-625 provides for a surplus recovery when a creditor's claim for a deficiency is eliminated under section 47-9-626, the statute makes such an award available only to debtors. *See* Tenn. Code Ann. § 47-9-625 (2013) ("A debtor whose deficiency is eliminated . . . may recover damages for the loss of any surplus.").

---

[3] We note that some of the issues discussed in the briefs are not specifically presented for our review in accordance with the Tennessee Rules of Appellate Procedure. For example, although Regions' brief contains a detailed argument as to how the trial court erred in determining the pre-judgment interest supposedly owed to it, this issue was not listed in the "statement of the issues" section of Regions' brief.

Under the Uniform Commercial Code, a debtor constitutes one of the following:

(A)     A person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor;

(B)     A seller of accounts, chattel paper, payment intangibles, or promissory notes; or

(C)     A consignee.

Tenn. Code Ann. § 47-9-102(a)(28). The Guarantors do not satisfy any of these definitional meanings in the context of the secured transaction at issue. Rather, they meet the definition of secondary obligors as defined in Tennessee Code Annotated section 47-9-102(a)(72).[4]

As explained in the Uniform Commercial Code official comments that follow these definitions, the term "secondary obligor" was added in order to help clarify what persons constituted a "debtor" in secured transactions:

> Determining whether a person was a "debtor" under [the former version of the statute] required a close examination of the context in which the term was used. To reduce the need for this examination, this article redefines "debtor" and adds new defined terms, "secondary obligor" and "obligor." In the context of part 6 (default and enforcement), these definitions distinguish among three classes of persons: (i) Those persons who may have a stake in the proper enforcement of a security interest by virtue of their nonlien property interest (typically, an ownership interest) in the collateral; (ii) those persons who may have a stake in the proper enforcement of the security interest because of their obligation to pay the secured debt; and (iii) those persons who have an obligation to pay the secured debt but have no stake in the proper enforcement of the security interest. Persons in the first class are debtors. Persons in the second class are secondary obligors if any portion of the obligation is secondary or if the obligor has a right of recourse against the debtor or another obligor with respect to an obligation secured by collateral. . . . .

Obligors in the third class are neither debtors nor secondary obligors.

---

[4] A secondary obligor means an obligor whose "obligation is secondary" or an obligor who "has a right of recourse with respect to an obligation secured by collateral against the debtor, another obligor, or property of either." Tenn. Code Ann. § 47-9-102(a)(72).

Tenn. Code Ann. § 47-9-102 cmt. 2. When LGT obtained the underlying loan in this case, it also granted a security interest in the aircraft. Accordingly, it is the debtor of the secured transaction at issue, as its stake in the enforcement of the security interest is tied to its property interest in the aircraft. Although the Guarantors did contract themselves to be accountable for LGT's loan obligations as guarantors, they did not grant a security interest in the aircraft to Regions. Their interest in Regions' enforcement of the security interest is thus tied to their obligation to pay the secured debt. As guarantors for the loan who have not granted any security interests in the collateral, they are secondary obligors. They are not debtors.

In support of their argument that they are entitled to a surplus, the Guarantors allege that Mr. Thomas has an interest in the collateral inasmuch as he is the sole shareholder of LGT. To advance this position, the Guarantors cite to the Tennessee Supreme Court's 1953 decision in *American Indemnity Co. v. Southern Missionary College*, 260 S.W.2d 269 (Tenn. 1953). At issue in that case was whether a college could recover on an insurance policy for a theft that occurred in a college store located on its premises. *Id.* at 271. The propriety of the college's recovery was in question because the college store operated under a corporation that was separate and distinct from the college. *Id.* In reviewing the case, our Supreme Court concluded that the college had an "insurable interest" because it would receive all assets of the corporation that operated the store when that corporation dissolved. *Id.* at 273.

Although Mr. Thomas ostensibly has insurable interests in assets of LGT pursuant to the dictates of the *Amercian Indemnity* decision, we fail to see how he, or any of the other Guarantors, qualify as a debtor in the context of the secured transaction at issue. LGT is a debtor because it created the security interest in the aircraft in order to secure its obligations to Regions. Mr. Thomas, in contrast, executed a guaranty. We are not aware of any case law establishing that a secondary obligor such as Mr. Thomas can also qualify as a debtor concerning collateral in which the secondary obligor has not granted a security interest. Moreover, there are no facts suggesting that the collateral was ever transferred to any of the Guarantors. *See* Tenn. Code Ann. § 47-9-102 cmt. 2 (noting that the definition of "debtor" would include transferees of the collateral). Because they do not qualify as debtors within the context of the secured transaction at issue, the Guarantors have no standing to pursue a surplus award.

*Regions' Right to a Deficiency*

In the first appeal of this case, this Court determined that Regions' disposition of the aircraft was not commercially reasonable due to its failure to provide proper notice of sale. *Regions I*, 422 S.W.3d at 565. We explained that because Regions had failed to comply with

the applicable notice requirements, it was unable to recover any deficiency unless it proved that proper compliance would have yielded a smaller amount than the outstanding secured obligation, together with attorney's fees and expenses. *Id.* at 566. We noted that such a burden was placed on Regions by virtue of the provisions outlined in Tennessee Code Annotated section 47-9-626. Because the trial court had not made any findings with respect to whether Regions had carried its statutory burden, we remanded the case for further proceedings to determine "the amount of the deficiency, if any, to which Regions is entitled under Tennessee Code Annotated § 47-9-626." *Id.* Our holding pretermitted any discussion as to whether any other aspects of the sale of the aircraft, outside the lack of proper notice, were commercially unreasonable.

Following our remand of the case, the parties demonstrated significant disagreement over what exactly Regions had to prove and how any damages should be calculated. As previously noted, the Guarantors generally argued that Regions had failed to show that it would not have been fully satisfied had it given proper notice of sale. Moreover, the Guarantors advocated that any measure of damages should be based on the fair market value of the aircraft at the time of its repossession. Regions argued that the case had been remanded for the sole purpose of allowing the trial court to make findings of fact on the fair market value of the collateral at the time of its sale. It eschewed any notion that the Guarantors' ability to pay the outstanding loan obligations had legal relevance to the issue on remand. According to Regions, the conclusion that there was an insufficient notice of sale merely triggered the trial court's need to make findings regarding the collateral's fair market value at the time of sale. It further contended that this Court had not taken any issue with the trial court's prior findings that all other aspects of the sale were commercially reasonable.[5]

Although the trial court ultimately concluded that Regions was entitled to a deficiency and measured the deficiency award based on the fair market value of the aircraft at the time it was sold, there is no evidentiary support for the trial court's conclusion that a deficiency is available to Regions. Simply put, Regions introduced no evidence into the record rebutting the presumption that had it provided proper notice, it would have received an amount equal to the total outstanding secured obligation, together with attorney's fees and expenses. Although such a burden was placed on Regions pursuant to Tennessee Code Annotated section 47-9-626, Regions failed to meet it. Regions ignored the effect that notice might have had on its ultimate recovery but instead narrowly focused its evidence on the fair market value of the aircraft at the time of sale. Because Regions introduced no evidence before the

---

[5] It is true that the appellate panel in *Regions I* did not address the trial court's initial findings that the sale itself was commercially reasonable. The challenge to those findings, however, was pretermitted. As such, although it is correct to state that this Court did not "take issue" with the trial court's findings that the actual sale was commercially reasonable, it is equally as true that this Court did not affirm them. The challenge to those findings was simply pretermitted in the first opinion. *See Regions I*, 422 S.W.3d at 567.

trial court suggesting that it would not have been fully satisfied had it provided proper notice to the Guarantors, Regions is not entitled to recover a deficiency.

Although the burden placed on Regions is mandated by the provisions outlined in Tennessee Code Annotated section 47-9-626, it is worth noting that the burden-shifting framework of the statute has not always been a part of codified law. Prior to the substantial revisions to Article 9 that occurred in 2001, the Uniform Commercial Code provided no specific direction as to what consequences arose when a secured creditor failed to provide proper notice of sale or otherwise disposed of collateral in a commercially unreasonable manner. In the absence of statutory direction, courts fashioned their own remedies. *See* Robert M. Lloyd, *The New Article 9: Its Impact on Tennessee Law (Part II)*, 67 Tenn. L. Rev. 329, 367 (2000). Over time, three general judicial approaches emerged. Some courts adopted an absolute bar and deprived secured creditors from recovering any deficiency. *Id.* Courts adopting an absolute bar rule reasoned that such an approach "furnishe[d] the most definite deterrent to [creditor] noncompliance." *Coones v. F.D.I.C.*, 848 P.2d 783, 802 (Wyo. 1993) (citation omitted). Other courts adopted a "set-off" rule. Under this approach, a debtor was entitled to no relief for a creditor's noncompliance except to the extent that it could prove that it was actually damaged by the failure to give notice or the failure to sell in a commercially reasonable manner. Lloyd, *supra*, at 367. Other jurisdictions, including Tennessee, adopted a "rebuttable presumption rule." *Id.* Under this rule, if the secured party failed to give proper notice before selling the collateral, or failed to sell the collateral in a commercially reasonable manner, a presumption arose "that the value of the collateral was equal to the amount of the debt." *Id.* Although the presumption was rebuttable, the failure to rebut it barred the creditor from recovering a deficiency. *Id.*

Although the commercial code now contains a "rebuttable presumption rule," codifying a remedy for an issue on which the statute had previously been silent, we observe that the provisions of the codified rule do not track the rebuttable presumption rule as that rule was often judicially defined. Under the common judicial phrasing of the rule, a noncomplying secured party could still recover a deficiency if it presented evidence that the fair market value of the collateral was less than the outstanding indebtedness. *See, e.g.*, *Emmons v. Burkett*, 353 S.E.2d 908, 910 (Ga. 1987) ("[T]he presumption is raised that the value of the collateral is equal of the indebtedness. To overcome this presumption, the creditor must present evidence of the fair and reasonable value of the collateral and the evidence must show that such value was less than the debt."); *see also Gregory Poole Equip. Co. v. Murray*, 414 S.E.2d 563, 568 (N.C. Ct. App. 1992) ("[L]ack of notice raises a presumption that the collateral was worth at least the amount of the debt. . . . The creditor may overcome this presumption by proving that the collateral was sold at market value, and that the market value was less than the amount of the debt."). However, a close examination at the relevant provisions of the codified rule reveals that the statute's focus is not so limited.

Under Tennessee law, the rebuttable presumption rule is codified at Tennessee Code Annotated section 47-9-626. In pertinent part, that statute reads as follows:

> In an action arising from a transaction in which the amount of a deficiency or surplus is in issue, the following rules apply:
>
> *(1)* A secured party need not prove compliance with the provisions of this part relating to collection, enforcement, disposition, or acceptance unless the debtor or a secondary obligor places the secured party's compliance in issue.
>
> *(2)* If the secured party's compliance is placed in issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in accordance with this part.
>
> *(3)* Except as otherwise provided in § 47-9-628, if a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with this part relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or a secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of:
>
> > (A) the proceeds of the collection, enforcement, disposition, or acceptance; or
> >
> > (B) *the amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with this part* relating to collection, enforcement, disposition, or acceptance.
>
> *(4)* For purposes of paragraph (3)(B), the amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees *unless the secured party proves that the amount is less than that sum*.

Tenn. Code Ann. § 47-9-626 (emphasis added). The upshot of this statute is that a secured party cannot recover a deficiency unless it proves that compliance with the commercial code's collection, enforcement, disposition, and acceptance requirements would have yielded a sum lesser than the total secured obligation, together with attorney's fees and expenses. Thus, Regions cannot obtain a deficiency judgment in this case unless it presented evidence

- 13 -

showing that, had it provided proper notice and conducted a commercially reasonable sale, it would not have been fully satisfied.

The rule outlined in section 47-9-626 is slightly different from the previous common judicial articulations of the rebuttable presumption rule because the potential rebutting evidence under the codified rule is not narrowly tied to whether the creditor received fair market value for the collateral. Rather, under the plain language of the statute, a secured party bears the burden of tendering probative evidence that its compliance with the relevant provisions would have yielded a lesser sum than the total outstanding indebtedness, plus expenses and attorney's fees. *See id.* Neither parties to secured transactions, nor the courts, can ignore the fact that the notice of sale requirements are among those statutory provisions that a secured party may be subject to when seeking to dispose of collateral. *See id.* §§ 47-9-611 to 47-9-614. The significance of the notice requirements is two-fold. In addition to allowing debtors and secondary obligors the opportunity to avoid a sale altogether by discharging the debt and redeeming the collateral, the notice requirements afford such parties a reasonable opportunity to see that the collateral brings a fair price. *R & J of Tenn., Inc. v. Blankenship-Melton Real Estate, Inc.*, 166 S.W.3d 195, 203 (Tenn. Ct. App. 2004) (citation omitted), *overruled on other grounds by Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896 (Tenn. 2007).

Understanding the function of the notice requirements helps to underscore why secured creditors cannot narrowly focus on the fair market value of collateral when their noncompliance with the applicable notice of sale requirements has been established. Under the codified rebuttable presumption rule, noncomplying secured parties must present evidence that they would have "realized" a sum less than the total amounts due to them had they complied with the relevant collection, enforcement, disposition, and acceptance requirements. *See* Tenn. Code Ann. § 47-9-626. Thus, a secured party who has not given proper notice must present evidence that it would not have been satisfied had it given notice. Again, it is important to note that the statute does not narrowly tie its inquiry concerning what would have been "realized" to the fair market value of the collateral at a sale. Such a restriction is not in the statute, and secured parties cannot ignore the potential effect that notice can have on their ultimate recovery. Indeed, it is entirely possible that secured parties can receive an amount greater than the fair market value of collateral if they adhere to the commercial code's requirements regarding notice. A debtor or guarantor may be motivated to redeem the collateral prior to sale,[6] and a debtor or guarantor can always try to "bid up" the price of collateral at a sale held by the creditor. Under the latter scenario, the debtor or guarantor may arrange to have a close friend or associate purchase the collateral at a

---

[6] The right of redemption is available to the "debtor, any secondary obligor, or any other secured party or lienholder." Tenn. Code Ann. § 47-9-623(a).

specified price. Absent proper notice, however, these actions are frustrated. Notice can make a difference, irrespective of what the market may otherwise dictate that the collateral is worth. If secured parties have failed to provide proper notice, it is their burden to show that the amount they would have realized through compliance is less than the "sum of the secured obligation, expenses, and attorney's fees." *Id.*

In its appellate brief, Regions asserts that any actions that the Guarantors might have taken had they been given proper notice of sale have no relevance to its right to a deficiency. Regions notes that the trial court previously sustained objections to the Guarantors' attempts to present the testimony of Mr. Thomas as to what he would have done had he been given notice, and by citing to authority such as *R & J of Tennessee, Inc. v. Blankenship-Melton Real Estate*, *Inc.*, 166 S.W.3d 195 (Tenn. Ct. App. 2004), it appears to argue that the rebuttable presumption rule merely triggers the trial court's duty to determine the fair market value of the aircraft on the date of sale. Respectfully, notwithstanding the discussion that exists in cases such as *R & J of Tennessee, Inc.*, we cannot give the codified rebuttable presumption rule the limited reading Regions attempts to place on it.[7] As we have previously stated, if a secured party fails to give the required notice of sale prior to its disposition of collateral, it must submit evidence that it would not have been fully satisfied had it given proper notice of sale. Of course, if any other aspects of a sale were determined to be commercially unreasonable, the secured party would also face the burden of showing that it would not have been fully satisfied had it properly proceeded in a commercially reasonable manner.

Regions failed to meet its statutory burden in this case because it put on no evidence attempting to show that providing proper notice to the Guarantors would not have resulted in its full satisfaction. Although Regions notes that the trial court did not allow the Guarantors to introduce evidence during the May 2011 hearing as to what they would have done had they been given proper notice and further notes that the Guarantors did not request the opportunity to introduce such evidence on remand, whether the Guarantors properly submitted proof on such issues into the evidentiary record is ultimately of no moment. The Guarantors did not have to rebut a presumption that notice would not have affected Regions' ultimate recovery.

---

[7] In the *R & J of Tennessee, Inc.* case, this Court noted that the rebuttable presumption rule required secured creditors to rebut the presumption that they are fully satisfied by tendering evidence of fair market value in the record. *R & J of Tenn., Inc.*, 166 S.W.3d at 210. We note that the *R & J* court did not specifically cite to the text of the codified rule in support of this limited explanation; rather, it cited to judicial decisions that were issued prior to the rebuttable presumption rule's codification. *See id.* As we have explained, when a secured party has failed to give notice, it cannot solely focus on fair market value. The secured party must submit evidence showing that, had it given notice, it would not have been fully satisfied. The analysis cannot be singularly limited to what would have been realized in a commercially reasonable sale.

That is not the standard under Tennessee Code Annotated section 47-9-626. Rather, having failed to provide sufficient notice of sale, Regions had the burden of showing that it would not have been satisfied had it given the Guarantors proper notice.

Although our research has not discovered many cases acknowledging the relevance that a debtor or guarantor's potential response to a notice of sale has to the application of the rebuttable presumption rule, a few courts have discussed the issue, or at least correctly articulated the relevant legal standard under the rule. *See Bank of Am., N.A. v. Sea-Ya Enters., LLC*, No. 11-445-RGA, 2013 WL 126268, at *3 (D. Del. Jan. 9, 2013) (noting that there was no reason to believe that secondary obligor could have affected the outcome of resale); *C & J Leasing Corp. v. Beasley Invs., Inc.*, 767 N.W.2d 420, 2009 WL 777870, at *5 (Iowa Ct. App. Mar. 26, 2009) (unpublished table decision) (noting that the creditor presented no evidence contradicting guarantor's testimony that he would have cured the default had proper notice been given); *Midstate Educators Credit Union, Inc. v. Werner*, 886 N.E.2d 893, 903 (Ohio Ct. App. 2008) ("[I]t was established at trial that even if appellant sent requisite notice of the sale and deficiency explanation that the amount that would have been recovered is the same as the actual proceeds recovered."). In conformity with the text of the codified rebuttable presumption rule under Revised Article 9, these cases recognize that a debtor or guarantor's potential post-notice actions are relevant to determining what proceeds a secured party can ultimately realize from the collateral.

Had the Guarantors been given notice, they potentially could have redeemed the collateral or taken other actions that would have resulted in Regions' total satisfaction. Despite these possibilities, Regions did not attempt to show that it would not have been fully satisfied had it provided proper notice.[8] In fact, whenever the Guarantors attempted to introduce evidence concerning their financial worth and ability to buy the collateral, Regions objected, with success, that such evidence was irrelevant. As already noted, it does not ultimately matter that the Guarantors failed to present evidence in this case on what they would have done had they been given notice. Under the statute, Regions was the party initially obligated to show that providing notice would not have mattered. It failed to introduce any evidence on this issue. As such, Regions is not entitled to recover a deficiency. The judgment of the trial court is hereby reversed. In light of our conclusion on this issue, a discussion of the other issues raised by the parties is pretermitted as unnecessary.

---

[8] For example, Regions did not submit any evidence casting doubt on the Guarantors' willingness or financial ability to redeem the collateral. Had proper notice been given, redemption of the aircraft would have been an action available to the Guarantors.

## V. Conclusion

Because Regions failed to establish its right to recover a deficiency award, the trial court's final order is reversed. Although the Guarantors seek to recover a surplus in this case due to the elimination of their deficiency under Tennessee Code Annotated section 47-9-626, we conclude that they have no standing to pursue such an award. One-half (1/2) of the costs of this appeal are assessed against Regions Bank and its surety, and one-half (1/2) of the costs of this appeal are assessed jointly and severally against Thomas D. Thomas, Helen L. Thomas, and the Thomas Family Living Trust, and their surety. Execution may issue for costs if necessary. This case is remanded to the trial court for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and are consistent with this Opinion.

_____

ARNOLD B. GOLDIN, JUDGE